FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 2 2 2022

TAMMY H. DOWNS, CLERK
By: _____ DEP CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

KRISTINA DAVIS, individually and on
behalf of all others similarly situated,

    *Plaintiff,*

        v.

ARKANSAS DEPARTMENT OF
CORRECTIONS, and SOLOMON GRAVES,
Secretary of the Arkansas Department of
Corrections, in his official capacity and in his
individual capacity.

    *Defendant.*

Case No. 4:22-cv-1140-DPM

This case assigned to District Judge Marshall
and to Magistrate Judge Harris

## CLASS ACTION COMPLAINT

Plaintiff Kristina Davis ("Plaintiff"), on behalf of herself and all others similarly situated,

brings this Complaint against the Arkansas Department of Corrections and its Secretary,

Solomon Graves, in both his official and individual capacities (collectively, "Defendants").

Plaintiff seeks certification of her claims against Defendants as a class action. In support thereof,

Plaintiff states as follows:

## INTRODUCTION

1.    Plaintiff brings this lawsuit under 42 U.S.C. § 1983 to challenge Defendants'

unconstitutional, retroactive reclassification of certain state-law crimes, the effect of which has

nullified the parole eligibility of hundreds of Arkansans.

2.    Specifically, under Arkansas law, citizens who are convicted of—or pleaded

guilty or nolo contendere to—more than one violent felony are ineligible for parole. A statute

1

enumerates said violent felonies, and as of April 1, 2015, Arkansas reclassified the crime of residential burglary as a violent felony.

3.      However, for individuals who were convicted of, or pleaded to, a residential burglary prior to April 1, 2015, it was the stated policy of the Arkansas Department of Corrections that a conviction for residential burglary occurring before April 1, 2015, would not count as a violent felony when determining parole eligibility under the statute denying parole for a second violent offense.  Instead, only residential burglary convictions for conduct occurring on or after April 1, 2015 would count towards a citizen's "two strikes."

4.      The Arkansas Department of Corrections not only adopted this policy, but affirmatively stated same both to prosecutors and defense attorneys.  This position was commonly known, and relied upon, by criminal defendants and their counsel when facing charges by the State, and also by prosecutors in fashioning plea agreements.

5.      However, in May 2022, seven years after the Arkansas Legislature's reclassification of residential burglary as a violent felony, the Defendants solicited an opinion letter from the Office of the Attorney General, which in turn stated that residential burglary convictions or pleas prior to April 1, 2015 *should* count as violent felonies, and computation of a citizen's parole eligibility should be adjusted, accordingly.

6.      Following the issuance of this opinion letter, Defendants reversed their policy of some seven years, and began retroactively using residential burglary for conduct occurring before April 1, 2015 as a predicate for revocation of parole eligibility.

7.      This has had the effect of inmates learning that, while they thought they would be eligible for parole in periods sometimes as short as weeks or months, instead they now will be required to spend the entirety of their sentence (often longer than a decade) behind bars, and the

2

Parole Board would be powerless to parole them, no matter their good behavior, rehabilitation or prison overcrowding.  Sometimes, citizens who were already released on parole have been returned to prison to finish out the remaining years of their sentences.

8.      Had the Arkansas General Assembly retrospectively redefined the punishment in the manner done by the Defendants, such conduct would be in flagrant violation of the Ex Post Facto Clause of the United States Constitution (Art.1 Sec,10, prohibiting a state from passing such), which broadly prohibits "the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Weaver v. Graham*, 450 U.S. 24, 30, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981).  To the extent that such administrative actions are not encompassed by the Ex Post Facto Clause, such retrospective redefinitions are specifically prohibited by the Due Process Clause of the Fourteenth Amendment, as established in cases such as *Bouie v. City of Columbia*, 378 U.S. 347, 84 S. Ct. 1697 (1964).

9.      Thus, whether the Defendants' actions are prohibited by the Ex Post Facto Clause, the Due Process Clause or both, Plaintiff and all other persons in the Class have been harmed and are entitled to relief.

10.     Additionally, as set forth below, Defendants have further failed to consistently apply their reversal of policy, leaving some citizens out on parole while others are forced to spend years longer in prison, notwithstanding the fact that all of these individuals are similarly-situated under Defendants' new policy.  Such action violates the Equal Protection Clause of the Fourteenth Amendment.

11.     Plaintiff brings this lawsuit individually and on behalf of a Class of all inmates incarcerated by the Arkansas Department of Corrections who (1) were found guilty of, or pleaded guilty or nolo contendere to, a count of residential burglary prior to April 1, 2015; and

who (2) are currently ineligible for parole because of the reclassification of that offense following the issuing of the issuance of AG Opinion 2022-10. Plaintiff seeks a declaration that Defendants' conduct, described herein, violates the Ex Post Facto Clause of the United States Constitution, as well as the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment. She also seeks prospective injunctive relief in the form of an injunction prohibiting the retroactive application of Act 895 to convictions or pleas of residential burglary occurring prior to April 1, 2015. Plaintiff further seeks injunctive relief and damages from Defendant Graves in his individual capacity.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over this action under 28 U.S.C. § 1331 and 1343. Further, Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 & 2201 and the general legal and equitable powers of this Court.

13.    Venue is appropriate under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district. Defendant is headquartered in this district, and developed and implemented the parole eligibility policies that are the subject of this lawsuit within this district.

## PARTIES

14.    Plaintiff Kristina Davis (a/k/a Kristina Cates) is a citizen of Arkansas and is currently incarcerated within the Arkansas Department of Corrections, inmate number ADC712198. Prior to April 1, 2015, Plaintiff's criminal record contained a count of residential burglary, but did not contain any "felonies involving violence," as were then enumerated under Ark. Code Ann. § 5-4-501(d)(2). In or about April 2020, Plaintiff faced another charge of residential burglary. Plaintiff's defense counsel was informed by Defendants' agent(s), at this

4

time, that this second residential burglary charge (now reclassified as a "felony involving violence" as explained, *infra*) would not render Plaintiff ineligible for parole. Therefore, upon the advice of counsel and based upon the representations made by Defendants, Plaintiff pleaded guilty to the second residential burglary charge, which carried a sentence of 240 months, and for which Plaintiff would be eligible for parole after 60 months, had the Defendants not altered their interpretation of applicable law. Since that time, at some point in or after May 2022, Plaintiff was informed that she would no longer be eligible for parole, because her residential burglary conviction for an offense occurring prior to April 1, 2015 was now classified as a "felony involving violence."

15.     Defendant Arkansas Department of Corrections is the state agency that oversees inmates and operates state prisons within the State of Arkansas.

16.     Defendant Solomon Graves is the Secretary of the Arkansas Department of Corrections. He (or his successor in office) is sued in both his official capacity and his individual capacity.

## COMMON FACTUAL ALLEGATIONS

I.     **Parole Eligibility in Arkansas, Generally.**

17.     Under Arkansas law, for all offenders sentenced on or after January 1, 1994, parole eligibility is determined by statute.

18.     Critically, "[a] person's parole eligibility shall be determined by the laws in effect at the time of the offense for which he or she is sentenced to the Division of Correction." Ark. Code Ann. § 16-93-612.

19.     Certain offenses—and categories of offenses—can render a person ineligible for parole. Pertinent to this action, subsequent to August 13, 2001, "[a]ny person who commits a

violent felony offense or any felony sex offense subsequent to August 13, 2001, and who has previously been found guilty of or pleaded guilty or nolo contendere to any violent felony offense or any felony sex offense shall not be eligible for release on parole by the board." Ark. Code Ann. § 16-93-609(b)(1). In turn, "'a violent felony offense or any felony sex offense' means those offenses listed in Ark. Code Ann. § 5-4-501(d)(2)" *Id.* at § 609(b)(2).

20.    Thus, if a person has two violent felonies or felony sex offenses on his or her record, that person will be ineligible for parole.

## II.    Under the Rubric of Criminal Justice Reform, Act 895 of 2015 Reclassifies Residential Burglary as a Violent Felony.

21.    In April 2015, the Arkansas Legislature passed Act 895, otherwise known as the Criminal Justice Reform Act of 2015 ("Act 895").

22.    The stated purpose of Act 895 was "to address prison overcrowding, promote seamless reentry into society, reduce medical costs incurred by the state and local governments, aid law enforcement agencies in fighting crime and keeping the peace, and to enhance public safety."[1]

23.    Among other things, Act 895 included the crime of residential burglary—as set forth in Ark. Code Ann. § 5-39-201(a)—in the list of "felonies involving violence" set forth under Ark. Code Ann. § 5-4-501(d)(2).

24.    Thus, following the enactment of Act 895, if a person had a conviction for residential burglary, any additional conviction or plea involving any *subsequent* violent felony or felony sex offense (including a second residential burglary) would render that person ineligible for parole.

---

[1]https://www.arkleg.state.ar.us/Acts/Document?type=pdf&act=895&ddBienniumSession=2015%2F2015R

6

25.     Following the enactment of Act 895, the Arkansas Department of Corrections

("ADC" or "Department") consistently articulated its position that the reclassification of

residential burglary as a violent felony listed under Ark. Code Ann. § 5-4-501(d)(2) would only

apply prospectively.  Pursuant to that interpretation, a residential burglary conviction or plea

*prior* to April 1, 2015 could not count as one of the "two strikes" that would render a person

ineligible for parole under Ark. Code Ann. § 16-93-609.  Conversely, any residential burglary

conviction or plea after April 1, 2015 could count as one of the two strikes.

26.     For years, the ADC informed both prosecutors and defense attorneys of its

position consistently and uniformly when asked.  In turn, prosecutors and defense attorneys

operated with this understanding as they litigated criminal cases involving residential burglary

charges or cases in which the defendant had an existing residential burglary conviction or plea.

27.     In particular, defense attorneys relied on this articulation of ADC policy when

providing legal counsel to their clients.  In multiple instances, these attorneys specifically

informed their clients that residential burglary convictions occurring prior to April 1, 2015 would

not count as a violent felony offense triggering application of Ark. Code Ann. § 16-93-609.  This

advice in turn influenced their client's calculus regarding whether to accept plea deals involving

crimes that would otherwise render the defendant ineligible for parole under § 16-93-609.  This

was also reflected on inmates' "time cards" showing them their parole eligibility dates.

28.     As one example, an attorney emailed the ADC in 2021 (Exhibit A), seeking to

confirm this policy and presenting the Department with the following fact pattern:

> I have a client in Arkansas state court with a prior Arkansas
> residential burglary conviction from 2012. Client is now facing a
> new Arkansas residential burglary charge. If convicted a second
> time of residential burglary, I understood the statute requires them
> to serve 100% (no parole) of any sentence for residential burglary,
> BUT I recall from past cases that ADC may not be counting prior

> residential burglary convictions before the 2015 enactment of the
> statute as predicates for serving 100%. I'm trying to properly
> advise my client (and the prosecuting attorney). If you can help,
> I'd appreciate it.

The Department responded as follows:

> ADC is not counting prior residential burglaries if they occurred
> before residential burglary was added to the list (4/1/2015) for
> serving 100%. If your clients [*sic*] prior residential burglary
> conviction was in 2012, he/she will not be required to serve 100%
> of the sentence.

29.     This policy—that "ADC is not counting prior residential burglaries if they

occurred before residential burglary was added to the list (4/1/2015) for serving 100%"—was the

consistent position articulated by the ADC to any inquiring attorney, and the common

understanding of the criminal defense bar in Arkansas, from the date of passage of Act 895 until

May 2022.

30.     Notably, this policy was not formulated by Defendant Graves—he did not become

Secretary of the ADC until 2020.  Rather, this policy was implemented under his predecessor,

Wendy Kelley.  However, upon assuming his position, Defendant Graves ratified the policy, and

the ADC continued to state that it would not count pre-April-2015 residential burglaries "for

serving 100%" until May 2022.

**III.     In May of 2022, the State Reverses Its Position on Residential Burglaries
         Committed Prior to April 1, 2015.**

31.     On May 24, 2022, the Arkansas Attorney General issued Opinion No. 2022-010

("Opinion" or "AG Opinion 2022-10") (Exhibit B), which upended the existing interpretation of

Act 895 regarding residential burglaries of which the citizen was convicted prior to April 1,

2015.

32.     The Opinion addressed the following question posed by Defendant Graves:

8

For purposes of parole eligibility under Ark. Code Ann. § 16-93-609, is a residential burglary committed before the effective date of Act [895] of 2015 (April [1], 2015) a prior 'violent felony offense' [so that] an offender with a current conviction for a violent felony offense [would be required] to serve 100% of his or her sentence?

33.    In response, the Opinion stated:

Yes, an offender previously convicted of residential burglary who committed an additional offense on or after April 1, 2015 is not eligible for parole.

34.    The Opinion acknowledged that "[g]ranted, residential burglary was not designated as a 'felony involving violence' until 2015," but went on to say

nothing in subsection 16-93-609(b) suggests that to render an offender ineligible for parole after the commission of another violent felony offense, the prior residential burglary must have occurred after 2015. Instead, to be ineligible for parole, an offender must only have committed his or her subsequent offense after the 2015 amendment's effective date. Thus, as relevant here. if the offender in question committed the crime for which he or she is currently serving a sentence after April 1, 2015, a prior conviction for residential burglary would render the offender ineligible for parole.

35.    However, the substance of § 16-93-609 does not end the legal inquiry.  The Opinion failed to account for the Ex Post Facto Clause of the United States Constitution, which provides that "[n]o State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10.

36.    Ex post facto laws are laws which are retrospective and/or retroactive and which disadvantage the affected offender by altering the definition of criminal conduct or increasing the punishment for the crime. *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S. Ct. 891, 137 L. Ed. 2d 63 (1997).  The Ex Post Facto Clause "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Weaver v. Graham*, 450 U.S. 24, 30, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981).

9

37.    Similarly, the Opinion failed to take into account the Due Process Clause of the Fourteenth Amendment, and Supreme Court precedent holding that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids." *Bouie v. Columbia*, 378 U.S. 347, 353, 84 S. Ct. 1697, 1702 (1964).  Thus, when an "unforeseeable state-court construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime."  *Id.* at 354-55.

38.    By (1) reclassifying residential burglary as a violent felony through the enactment of Act 895; yet (2) applying the reclassification to residential burglary convictions or pleas that occurred *prior* to Act 895's effective date, ADC has turned Act 895 into an unconstitutional ex post facto law and violated the Due Process Clause of the Fourteenth Amendment.

39.    The consequences of this about-face are devastating.  To date, at public hearings involving this issue, Defendant Graves acknowledged that 393 inmates were affected, with 101 inmates having been released, and 292 inmates remaining in custody.[2]

### A. Even Under Its New Policy, Defendants Still Apply Their Parole Eligibility Procedures Capriciously and Unevenly.

40.    Of the 101 inmates that had been released, Defendant Graves stated that it would be unlawful to return them to custody due to "inherit [*sic*] liberty," but that for the inmates who remain in prison, their sentences and parole eligibility have been recalculated pursuant to AG

---

[2] Stephen Simpson, *Department of Corrections admits misinterpretation of Arkansas law, leading to re-incarceration, serving entire sentence without parole*, Arkansas Democrat Gazette (October 25, 2022) (available at https://www.arkansasonline.com/news/2022/oct/25/department-of-corrections-admits/)

Opinion 2022-10.[3] Despite this supposed recognition of a liberty interest held by released inmates, the Department did in fact re-incarcerate some inmates who had been released.

41.     Thus, the ADC *continues* to capriciously apply its policies, stating on the one hand that some inmates who already have been paroled under the old policy may not be required to serve out 100% of their sentences in prison (although some inmates were returned to prison), but any identically-situated prisoners who have not yet been paroled must serve out 100% of their sentence behind bars. In some instances, inmates who have been anticipating parole within a matter of months or even weeks are now facing a decade or more of additional prison time.

42.     Yet the Fourteenth Amendment provides, in pertinent part, that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. When a state actor intentionally treats a member of an identifiable class differently from other similarly-situated individuals without a rational basis, or a rational relationship to a legitimate state purpose, for the difference in treatment, this violates the Equal Protection Clause of the Fourteenth Amendment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000); *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008).

43.     This is a perverse and untenable result for a law aimed at "address[ing] prison overcrowding" and "promot[ing] seamless reentry into society." Instead, the unconstitutional revision of ADC policy, facilitated by AG Opinion 2022-10, has wreaked havoc on inmates, their families, and their communities across Arkansas, and resulted in the needless extension of prison time (and even re-incarceration) for people who detrimentally relied on the previous,

---

[3] *Id.*

lawful policy set forth by the ADC and communicated to prosecutors and defense attorneys, alike.

44.     It is not just the inmates and their families who bear the burden of the ADC's policy reversal.  The Arkansas Department of Corrections spends $24,000 per inmate per year.[4] Assuming that the ADC's estimate of 292 incarcerated inmates is correct, this means that its unlawful change in policy saddles Arkansas with an additional $7,008,000 in costs per year for the foreseeable future.

45.     Further, this unconstitutional shift in policy comes at a time when Arkansas prisons face drastic problems (and attendant costs) caused by overcrowding.  In 2022, the Arkansas Legislature approved $75 million to create a new prison facility to address this issue, yet the 498-bed facility to be built with those funds will not ameliorate the problem—at present, observers estimate that the state prisons and county jails are over capacity by approximately 1,900 inmates.[5]

## PLAINTIFF'S EXPERIENCE

46.     Plaintiff Kristina Davis (a/k/a Kristina Cates) is currently incarcerated with the Arkansas Department of Corrections, inmate number ADC712198.

47.     Prior to April 1, 2015, Plaintiff's criminal record contained a count of residential burglary, but did not contain any "felonies involving violence," as then enumerated under Ark. Code Ann. § 5-39-201(a).

---

[4] Arkansas Advisory Committee to the U.S. Commission on Civil Rights, *Mass Incarceration & Civil Rights in Arkansas* (April 2020), at 6 (available at https://www.usccr.gov/files/pubs/2020/04-14-AR-Mass-Incarceration-Report.pdf)
[5] Neal Earley, *Arkansas needs more prisons to ease overcrowding, county officials tell legislators*, Arkansas Democrat-Gazette (September 1, 2022) (available at https://www.arkansasonline.com/news/2022/sep/01/arkansas-needs-more-prisons-to-ease-overcrowding/)

48.     In or about April 2020, Plaintiff faced another charge of residential burglary.

49.     Plaintiff's defense counsel wrote an email to Defendant ADC's Records

Coordinator, seeking information as to Plaintiff's existing criminal record, in order to gauge

whether her pending residential burglary charge would render her ineligible for parole.  Exhibit

C. Plaintiff's defense counsel wrote, in pertinent part:

> Is there any way you can tell me if she has been in the ADC in the
> past?...[S]he is now facing a res. Burg [sic] charge, and according
> to the prosecutor, she has 4 prior for res burg.  Would a conviction
> for another res. Burg [sic] now be 100%?  I hate they made this a
> violent crime because it really messes up what we have to tell our
> clients.

50.     In response, DOC's Records Coordinator replied, in pertinent part:

> If she gets convicted of a residential burglary now, she would not
> have to serve 100%, at least looking at her Arkansas information.
> Remind them, that for the charge of residential burglary, to be
> considered for 100% it has to be committed after 04/01/2015.

51.     Therefore, upon the advice of counsel and based upon the representations made

by Defendants, Plaintiff pleaded guilty to the second residential burglary charge, which carried a

sentence of 240 months, and for which Plaintiff would be eligible for parole after 60 months, had

the ADC not changed its policy.

52.     Since that time, at some point on or after May 2022, Plaintiff was informed that

she would no longer be eligible for parole, because her residential burglary charge prior to April

1, 2015 was now classified as a "felony involving violence."

53.     Plaintiff must now serve 100% of her sentence—240 months—due to Defendants'

unlawful ex post facto application of Act 895 and violations of the Due Process Clause of the

Fourteenth Amendment.  Absent Defendants' unconstitutional policy, Plaintiff would be eligible

for parole in 60 months.

## CLASS ALLEGATIONS

54.     Plaintiff brings this action, individually and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23.  Plaintiff seeks certification of the following Class (the "Class"):

> All inmates incarcerated by the Arkansas Department of Corrections who (1) were found guilty of, or pleading guilty or nolo contendere to, a count of residential burglary prior to April 1, 2015; and who (2) are currently ineligible for parole because of the reclassification of that offense following the issuing of the issuance of AG Opinion 2022-10.

55.     Excluded from the Class are the following individuals: Defendants and their parents, subsidiaries, affiliates, and any entity in which Defendants have a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

56.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

57.     **Numerosity (Rule 23(a)(1)).**  The members of the Class are so numerous that joinder is impractical.  As detailed above, there are at least 292 members of the Class.

58.     **Commonality (Rule 23(a)(2)).**  There are questions of law or fact common to the Class.  These questions include, but are not limited to, the following:

> i.   Whether Defendants' conduct, complained of herein, violates the Ex Post Facto Clause of the United States Constitution;
>
> ii.  Whether Defendants' conduct, complained of herein, violates the Due Process Clause of the Fourteenth Amendment;
>
> iii. Whether Defendants' conduct, complained of herein, violates the Equal Protection Clause of the Fourteenth Amendment;

14

          iv.   Whether an injunction should issue; and

          v.   Whether declaratory relief should be granted

59.    **Typicality (Rule 23(a)(3)).**  Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all members of the Class, was convicted or pleaded to a charge of residential burglary prior to April 1, 2015 and, following the issuance of AG Opinion 2022-10, Plaintiff's parole eligibility was eliminated due to the reclassification of that pre-2015 charge as a violent felony.

60.    **Adequacy (Rule 23(a)(4)).**  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff's interests do not conflict with the interests of the members of the Class.  Furthermore, Plaintiff has retained competent counsel experienced in class action litigation, and Plaintiff's counsel will fairly and adequately protect and represent the interests of the Class.

61.    **Final Declaratory or Injunctive Relief (Rule 23(b)(2)).**  A class action is maintainable under Rule 23(b)(2). The policies and practices of Defendants complained of herein are systemic. Thus, the representative Plaintiff, like all other members of the Class, has been injured and faces substantial risk of the same injury in the future. The factual basis of Defendants' misconduct is common to all members of the Class and represents a common thread of conduct resulting in injury to all members of the Class. Therefore, injunctive and declaratory relief is appropriate respecting the Class as a whole.

62.    **Predominance & Superiority (Rule 23(b)(3)).** In addition to satisfying the prerequisites of Rule 23(a), Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual Class members, and a class action is superior to individual litigation

and all other available methods for the fair and efficient adjudication of this controversy. The amount of damages available to individual Plaintiff is insufficient to make litigation addressing Defendants' conduct economically feasible in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

63.    **Particular Issues (Rule 23(c)(4)).** Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(c)(4). Their claims consist of particular issues that are common to all Class and Subclass Members and are capable of class-wide resolution that will significantly advance the litigation.

## CAUSES OF ACTION

### COUNT ONE
**Violation of the Ex Post Facto Clause of Article 1, Section 10 of the U.S. Constitution
(As to all Defendants)**

64.    Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

65.    Following the issuance of AG Opinion 2022-10, Defendants' policy reversal on the effect of residential burglary convictions or pleas prior to April 1, 2015 on parole eligibility "creates a significant risk of prolonging [the] incarceration" of Plaintiff and members of the Class, in violation of the Ex Post Facto Clause. *Garner v. Jones*, 529 U.S. 244, 251, 120 S. Ct. 1362, 1368 (2000). Indeed, Plaintiff and members of the Class already have experienced drastically lengthened periods of incarceration.

66.    Alternatively, "evidence drawn from the rule's practical implementation by the agency charged with exercising discretion" demonstrates that the retroactive application of reclassifying residential burglary convictions and pleas prior to April 1, 2015 "will result in a longer period of incarceration than under the earlier rule." *Id.* at 255.

67.    Under either scenario, Defendants' conduct complained of herein subjects Plaintiff and members of the Class to longer periods of incarceration for acts that, when committed, did not render a person ineligible for parole.

68.    Defendants' retroactive application of Act 895 to residential burglary convictions or pleas occurring prior to 2015—and commensurate revocation of parole eligibility of Plaintiff and members of the Class based on said retroactive application—violates the Ex Post Facto Clause of Article 1, Section 10 of the United States Constitution.

69.    As a result of said violations, Plaintiff and Class members are entitled to prospective injunctive relief.

### COUNT TWO
**Violation of the Due Process Clause of the Fourteenth Amendment**
**(As to all Defendants)**

70.    Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

71.    Following the issuing of AG Opinion 2022-10, Defendants' policy reversal on the effect of residential burglary convictions or pleas prior to April 1, 2015 on parole eligibility amounts to "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, [which] operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids." *Bouie v. Columbia*, 378 U.S. 347, 353, 84 S. Ct. 1697, 1702 (1964).

72.    Because Defendants' "unforeseeable...construction" of Act 895 was "applied retroactively to subject a person to criminal liability for past conduct, the effect is to deprive him

17

of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime." *Id.* at 354-55.

73.     Defendants' conduct complained of herein was unforeseeable because, *inter alia*, it was the exact opposite of the repeatedly and consistently stated ADC policy since the passage of Act 895, which was relied upon and acted upon by Plaintiff and the Class.

74.     Further, Defendants continue to violate Plaintiff's and Class members' Due Process through the uneven application of the policy reversal. Roughly 1/3 of affected inmates already have been released on parole and are (correctly) allowed to remain on parole given their "[inherent] liberty" in Defendants' view (although some were returned to prison) yet the incarcerated members of the Class, who are identically situated in the eyes of the law, must remain behind bars for decades more than they were initially told by their lawyers and by Defendants.

75.     As a result of said violations, Plaintiff and Class members are entitled to prospective injunctive relief.

**COUNT THREE**
**Violation of the Equal Protection Clause of the Fourteenth Amendment**
**(As to all Defendants)**

76.     Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

77.     The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

78.     When a state actor intentionally treats a member of an identifiable class differently from other similarly situated individuals without a rational basis, or a rational relationship to a legitimate state purpose, for the difference in treatment, this violates the Equal Protection Clause of the Fourteenth Amendment. *Village of Willowbrook v. Olech*, 528 U.S.

562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000); *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008).

79.    Defendants violated and continue to violate the Equal Protection Clause of the Fourteenth Amendment, as to Plaintiff and Class members, through the uneven application of their policy reversal.  Roughly 1/3 of affected inmates already have been released on parole and are (correctly) allowed to remain on parole given their "[inherent] liberty" in Defendants' view (although some were returned to prison), yet the incarcerated members of the Class, who are identically situated in the eyes of the law, must remain behind bars for decades more than they were initially told by their lawyers and by Defendants.

80.    Defendants' uneven and capricious application of their policy reversal has no rational basis, nor does it have a rational relationship to a legitimate state purpose, for the difference in treatment.

81.    As a result of said violations, Plaintiff and Class members are entitled to prospective injunctive relief.

## COUNT FOUR
### Pendent State Law Claim – Promissory Estoppel
### (As to Defendant Graves in his individual capacity)

82.    Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

83.    Through consistent representations regarding the application of the ADC's pre-May-2022 policy of "not counting prior residential burglaries if they occurred before residential burglary was added to the list (4/1/2015) for serving 100%" (*see* Paragraph 28, *supra*) Defendant Graves made a promise to Plaintiff and Class members.

84.     Specifically, Defendant Graves was aware that this was the existing policy of the Department of Corrections, and allowed that policy to be conveyed to inquiring defendants, their lawyers, and to prosecutors.

85.     Defendant reasonably should have expected—and indeed, did expect—Plaintiff and Class members, and their lawyers, to rely on this promise and to act (and/or refrain from acting) in reliance on this promise.

86.     Plaintiff and Class members, and their lawyers, did act and/or refrain from acting in reliance on this promise, and did so to their detriment.

87.     Injustice can only be avoided by enforcement of the promise made by Defendant to Plaintiff and Class members.

88.     Plaintiff and Class members seek injunctive relief, as well as damages in an amount to be proven at trial.

## COUNT FIVE
### Pendent State Law Claim – Breach of Contract
### (As to Defendant Graves in his individual capacity)

89.     Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

90.     Through consistent representations regarding the application of the ADC's pre-May-2022 policy of "not counting prior residential burglaries if they occurred before residential burglary was added to the list (4/1/2015) for serving 100%" (*see* Paragraph 28, *supra*), Defendant Graves entered into a contract with Plaintiff and Class members.

91.     Specifically, Defendant Graves was aware that this was the existing policy of the Department of Corrections and allowed that policy to be conveyed to inquiring defendants, their lawyers, and to prosecutors.  This policy formed a key term of an enforceable contract between

Defendants, on the one hand, and Plaintiff and Class members, on the other.  This contract was supported by consideration.

92.     Plaintiff and Class members performed under the terms of this agreement.

93.     Defendant Graves was similarly obligated to perform under terms of the agreement yet failed to do so when he directed the Department of Corrections to reverse its policy governing parole eligibility for offenders with residential burglaries prior to April 1, 2015. This action was a breach of a material term of the contract between Defendant Graves, on the one hand, and Plaintiff and Class members, on the other.

94.     Plaintiff and Class members have suffered damages as a result of Defendant Graves' breach.

95.     Plaintiff and Class members seek injunctive relief, as well as damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and members of the Class respectfully ask this Court for the following:

a.   That judgment be entered against Defendants and in favor of Plaintiff and Class members on the causes of action set forth in this Complaint;

b.   That judgment be entered against Defendants for all injunctive, declaratory, and other equitable relief sought, including but not limited to an order permanently enjoining Defendants from retroactively applying Act 895's reclassification of residential burglaries for conduct occurring prior to April 1, 2015;

c.   Damages in an amount to be proven at trial;

d.   Reasonable attorney's fees and litigation costs, pursuant to 42 U.S.C. § 1988; and

e.   All other such other relief as the Court deems just and equitable.

Dated: November 22, 2022

Respectfully Submitted,

David Slade (ABN 2013143)
slade@wh.law
Brandon Haubert (ABN 2013137)
brandon@wh.law
Stewart Whaley (ABN 2009084)
stewart@wh.law
wh LAW
1 Riverfront Place, Suite 745
North Little Rock, AR 72114
Tel: (501) 891-6000
Fax: (501) 222-3027

JEFF ROSENZWEIG
Arkansas Bar No. 77115
300 Spring St., Suite 310
Little Rock, AR 72201
(501) 372-5247
jrosenzweig@att.net

Michael Kiel Kaiser (ABN 2015001)
LASSITER & CASSINELLI
300 S. Spring St., Suite 800
Little Rock, AR 72201
501-370-9300 (office)
501-370-9306 (fax)
michael@LCArkLaw.com

Jordan Tinsley (ABN 2008270)
TINSLEY & YOUNGDAHL, PLLC
1218 West Sixth Street
Little Rock, AR 72201
Office: (501) 374-2099
Fax: (501) 374-2098
Jordan@TYattorney.com

Lauren M. Elenbaas, (ABN 2014130)
SHAW & ELENBAAS
1315 Main Street
Conway, Arkansas 72034
Phone: 501-329-5803
Fax: 501-327-2961
laurenshawlaw@gmail.com

*Attorneys for Plaintiff and the proposed Class*

22

# EXHIBIT A

**From:** Shelli Maroney <__Shelli.Maroney@arkansas.gov__>
**Sent:** Wednesday, August 4, 2021 3:15 PM
**To:** __jeff@harrelsonfirm.com__
**Subject:** FW: Parole question re: second residential burglary conviction

Good afternoon Mr. Harrelson,

I have been aske d to respond to your email below. ADC is not counting prior residential burglaries if they occurred before residential burglary was added to the list (4/1/2015) for serving 100%.  If your clients prior residential burglary conviction was in 2012, he/she will not be required to serve 100% of the sentence.

Thank you.



*Shelli Maroney*

**ADC Records Administrator**
**Arkansas Division of Corrections**
**2403 E. Harding Ave**
**Pine Bluff, Ar 71601**
**__Shelli.Maroney@Arkansas.gov__**
Office: 870-267-6679
Cell: 870-550-8547

Confidentiality Notice: This e-mail message and any attachments is the property of the State of Arkansas and may be protected by state and federal laws governing disclosure of private information. It is for the intended recipient only. If an addressing or transmission error has misdirected this e-mail, please notify the author by replying to it. If you are not the intended recipient you may not use, disclose, distribute, copy, print or rely on this e-mail.

**From:** Christine Cryer <__Christine.Cryer@arkansas.gov__>
**Sent:** Wednesday, August 4, 2021 3:00 PM
**To:** Shelli Maroney <__Shelli.Maroney@arkansas.gov__>
**Subject:** FW: Parole question re: second residential burglary conviction

Would you mind responding to him please?

**From:** Jeff Harrelson <__jeff@harrelsonfirm.com__>
**Sent:** Wednesday, August 4, 2021 1:17 PM
**To:** Christine Cryer <__Christine.cryer@arkansas.gov__>
**Subject:** Parole question re: second residential burglary conviction

Ms. Cryer: In the past, I had contacted Mr. DePriest regarding ADC parole issues, but I understand he has retired and I was directed to your office.  If someone else at ADC handles these issues, please notify me or just forward this message to them and copy me so I can try to get some direction with my issue.

I have a client in Arkansas state court with a prior Arkansas residential burglary conviction from 2012. Client is now facing a new Arkansas residential burglary charge.  If convicted a second time of residential burglary, I understood the statute requires them to serve 100% (no parole) of any sentence for residential burglary, BUT I recall from past cases that ADC may not be counting prior residential burglary convictions before the 2015 enactment of the statute as predicates for serving 100%. I'm trying to properly advise my client (and the prosecuting attorney). If you can help, I'd appreciate it. I'm working from home a lot, so if a call is better, my cell number is ███████. Thanks.

Jeff Harrelson
Attorney at Law
210 North State Line Avenue, Suite 503 (71854)
Post Office Box 40 (75504)
Texarkana, Ark.-Tex.
Telephone: (870)772-0300
Fax: (870)772-0302
Email: **jeff@harrelsonfirm.com**

# EXHIBIT B



STATE OF ARKANSAS
ATTORNEY GENERAL
LESLIE RUTLEDGE

Opinion No. 2022-010

May 24, 2022

Mr. Solomon Graves
Secretary, Ark. Dep't of Corrections
1302 Pike Ave, Suite C
North Little Rock, AR  72114

Dear Secretary Graves:

This is in response to your request for my opinion on the following question concerning Ark. Code Ann. § 16-93-609:

> For purposes of parole eligibility under Ark. Code Ann. § 16-93-609, is a residential burglary committed before the effective date of Act [895] of 2015 (April [1], 2015) a prior 'violent felony offense' [so that] an offender with a current conviction for a violent felony offense [would be required] to serve 100% of his or her sentence?

**RESPONSE**

Yes, an offender previously convicted of residential burglary who committed an additional offense on or after April 1, 2015 is not eligible for parole.

**DISCUSSION**

Section 16-93-609 states in relevant part that any person who commits a violent felony after August 13, 2001, and who has previously been found guilty of a violent felony shall not be eligible for parole:

> Any person who commits a violent felony offense … subsequent to August 13, 2001, and who has previously been found guilty of or

Mr. Solomon Graves
Secretary, Dep't of Corrections
Opinion No. 2022-010
Page 2

> pleaded guilty or nolo contendere to any violent felony offense …
> shall not be eligible for release on parole by the board.[1]

A "violent felony offense" means those offenses listed in Ark. Code Ann. § 5-4-501(d)(2),[2] and "[r]esidential burglary" is among those offenses.[3] Thus, subsection 16-93-609(b)'s parole ineligibility provision applies to a defendant "who has previously been found guilty of or pleaded guilty or nolo contendere to any violent felony offense," including residential burglary.

Granted, residential burglary was not designated as a "felony involving violence" until 2015.[4] But critically for your question, nothing in subsection 16-93-609(b) suggests that to render an offender ineligible for parole after the commission of another violent felony offense, the prior residential burglary must have occurred after 2015. Instead, to be ineligible for parole, an offender must only have committed his or her subsequent offense after the 2015 amendment's effective date.[5] Thus, as relevant here, if the offender in question committed the crime for which he or she is currently serving a sentence after April 1, 2015, a prior conviction for residential burglary would render the offender ineligible for parole.

Sincerely,

*Leslie Rutledge*

LESLIE RUTLEDGE
Attorney General

---

[1] Ark. Code Ann. § 16-93-609(b)(1) (Supp. 2021).

[2] *Id.* at § 16-93-609(b)(2) ("As used in this subsection, 'a violent felony offense' … means those offenses listed in § 5-4-501(d)(2).").

[3] Ark. Code Ann. § 5-4-501(d)(2)(A)(xi) (Supp. 2021).

[4] *See* Acts 2015, No. 895, § 3 (effective April 1, 2015, adding "residential burglary, § 5-39-201(a)" as a "felony involving violence" under Ark. Code Ann. § 5-4-501(d)(2)).

[5] Nor for that matter would the application of the statute to offenders who committed an additional offense after April 1, 2015, present any constitutional issues since an offender would be sentenced pursuant to the statute in effect at the time of his or her offense. *See Handy v. State*, 2017 Ark. App. 74, *7–8, 510 S.W.3d 292, 297 (2017) (rejecting the argument that none of the offender's pre-2015 felony residential burglaries should have counted toward his habitual-offender status under Ark. Code Ann. § 5-4-501(d)(1)).

# EXHIBIT C

## Gregg Parrish

**From:** Charonda Rushing
**Sent:** Friday, April 10, 2020 10:31 AM
**To:** Gregg Parrish
**Subject:** RE: Kristina Davis, dob ▮▮▮▮ W/F

Yes, she is listed under Kristina Cates, ADC712198. She had some probation sentences from Miller and Hempstead County.

Miller County, 2002-530, forgery, 36 month probation
Miller County, 2011-637, forgery, 10 year probation
Hempstead County, 2012-18, Poss., furnishing Proh. Articles, B &E, Poss., Obstruct Gov. Op., 6 years probation
Miller County, 2012-62, Res. Burg, 10 year probation

She came to ADC on the below cases from Hempstead and Miller County:
2013-63 from Hempstead County 72 month sentence
2012-52(revo) from Miller County 72 month sentence

If she gets convicted of a residential burglary now, she would not have to serve 100%, at least looking at her Arkansas information. Remind them, that for the charge of residential burglary, to considered for 100% it has be committed after 04/01/2015. I am not able to run a background to check for any out of state charges. But keep in mind, that residential burglary, committed after 01/01/2018 serves ½, not 1/3.

Hope this helps.

Charonda Rushing, Records Coordinator
Centralized Records
Administrative Annex East
2403 E. Harding
Pine Bluff, AR 71601
Phone: (870) 267-6679
Fax: (870) 267-6607
Email: charonda.rushing@arkansas.gov

**Confidentiality Notice: This e-mail message and any attachments is the property of the State of Arkansas and may be protected by state and federal laws governing disclosure of private information. It is for the intended recipient only. If an addressing or transmission error has misdirected this e-mail, please notify the author by replying to it. If you are not the intended recipient you may not use, disclose, distribute, copy, print or rely on this e-mail.**

**From:** Gregg Parrish <Gregg.Parrish@arkansas.gov>
**Sent:** Friday, April 10, 2020 9:20 AM
**To:** Charonda Rushing <Charonda.Rushing@arkansas.gov>
**Cc:** Gregg Parrish <Gregg.Parrish@arkansas.gov>
**Subject:** Kristina Davis, dob ▮▮▮▮ W/F

1

Is there any way you can tell me if she has been in the ADC in the past?  She has pending charges in Howard County, and the prosecutor tells me she has an extensive history, but I don't see anything online.

Also, she is now facing a res. Burg charge, and according to the prosecutor, she has 4 priors for res burg.  Would a conviction for another res. Burg now be 100%?  I hate they made this a violent crime because it really messes up what we have to tell our clients.

Hope you are staying safe as well as your loved ones.  Take care of yourself.

GREGG E. PARRISH
Executive Director
Arkansas Public Defender Commission
101 E. Capitol Ave.
Suite 201
Little Rock, AR  72201
(501) 682 9070

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

KRISTINA DAVIS, individually and on
behalf of all others similarly situated,

     *Plaintiff*,

          v.

ARKANSAS DEPARTMENT OF
CORRECTIONS, and SOLOMON GRAVES,
Secretary of the Arkansas Department of
Corrections, in his official capacity and in his
individual capacity.

     *Defendant*.

Case No. _____

## CLASS ACTION COMPLAINT

Plaintiff Kristina Davis ("Plaintiff"), on behalf of herself and all others similarly situated,

brings this Complaint against the Arkansas Department of Corrections and its Secretary,

Solomon Graves, in both his official and individual capacities (collectively, "Defendants").

Plaintiff seeks certification of her claims against Defendants as a class action. In support thereof,

Plaintiff states as follows:

### INTRODUCTION

1.     Plaintiff brings this lawsuit under 42 U.S.C. § 1983 to challenge Defendants'

unconstitutional, retroactive reclassification of certain state-law crimes, the effect of which has

nullified the parole eligibility of hundreds of Arkansans.

2.     Specifically, under Arkansas law, citizens who are convicted of—or pleaded

guilty or nolo contendere to—more than one violent felony are ineligible for parole. A statute

1

enumerates said violent felonies, and as of April 1, 2015, Arkansas reclassified the crime of residential burglary as a violent felony.

3.     However, for individuals who were convicted of, or pleaded to, a residential burglary prior to April 1, 2015, it was the stated policy of the Arkansas Department of Corrections that a conviction for residential burglary occurring before April 1, 2015, would not count as a violent felony when determining parole eligibility under the statute denying parole for a second violent offense.  Instead, only residential burglary convictions for conduct occurring on or after April 1, 2015 would count towards a citizen's "two strikes."

4.     The Arkansas Department of Corrections not only adopted this policy, but affirmatively stated same both to prosecutors and defense attorneys.  This position was commonly known, and relied upon, by criminal defendants and their counsel when facing charges by the State, and also by prosecutors in fashioning plea agreements.

5.     However, in May 2022, seven years after the Arkansas Legislature's reclassification of residential burglary as a violent felony, the Defendants solicited an opinion letter from the Office of the Attorney General, which in turn stated that residential burglary convictions or pleas prior to April 1, 2015 *should* count as violent felonies, and computation of a citizen's parole eligibility should be adjusted, accordingly.

6.     Following the issuance of this opinion letter, Defendants reversed their policy of some seven years, and began retroactively using residential burglary for conduct occurring before April 1, 2015 as a predicate for revocation of parole eligibility.

7.     This has had the effect of inmates learning that, while they thought they would be eligible for parole in periods sometimes as short as weeks or months, instead they now will be required to spend the entirety of their sentence (often longer than a decade) behind bars, and the

2

Parole Board would be powerless to parole them, no matter their good behavior, rehabilitation or prison overcrowding.  Sometimes, citizens who were already released on parole have been returned to prison to finish out the remaining years of their sentences.

8.      Had the Arkansas General Assembly retrospectively redefined the punishment in the manner done by the Defendants, such conduct would be in flagrant violation of the Ex Post Facto Clause of the United States Constitution (Art.1 Sec,10, prohibiting a state from passing such), which broadly prohibits "the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Weaver v. Graham*, 450 U.S. 24, 30, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981).  To the extent that such administrative actions are not encompassed by the Ex Post Facto Clause, such retrospective redefinitions are specifically prohibited by the Due Process Clause of the Fourteenth Amendment, as established in cases such as *Bouie v. City of Columbia*, 378 U.S. 347, 84 S. Ct. 1697 (1964).

9.      Thus, whether the Defendants' actions are prohibited by the Ex Post Facto Clause, the Due Process Clause or both, Plaintiff and all other persons in the Class have been harmed and are entitled to relief.

10.     Additionally, as set forth below, Defendants have further failed to consistently apply their reversal of policy, leaving some citizens out on parole while others are forced to spend years longer in prison, notwithstanding the fact that all of these individuals are similarly-situated under Defendants' new policy.  Such action violates the Equal Protection Clause of the Fourteenth Amendment.

11.     Plaintiff brings this lawsuit individually and on behalf of a Class of all inmates incarcerated by the Arkansas Department of Corrections who (1) were found guilty of, or pleaded guilty or nolo contendere to, a count of residential burglary prior to April 1, 2015; and

3

who (2) are currently ineligible for parole because of the reclassification of that offense following the issuing of the issuance of AG Opinion 2022-10. Plaintiff seeks a declaration that Defendants' conduct, described herein, violates the Ex Post Facto Clause of the United States Constitution, as well as the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment.   She also seeks prospective injunctive relief in the form of an injunction prohibiting the retroactive application of Act 895 to convictions or pleas of residential burglary occurring prior to April 1, 2015. Plaintiff further seeks injunctive relief and damages from Defendant Graves in his individual capacity.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over this action under 28 U.S.C. § 1331 and 1343. Further, Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 & 2201 and the general legal and equitable powers of this Court.

13.    Venue is appropriate under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district. Defendant is headquartered in this district, and developed and implemented the parole eligibility policies that are the subject of this lawsuit within this district.

## PARTIES

14.    Plaintiff Kristina Davis (a/k/a Kristina Cates) is a citizen of Arkansas and is currently incarcerated within the Arkansas Department of Corrections, inmate number ADC712198. Prior to April 1, 2015, Plaintiff's criminal record contained a count of residential burglary, but did not contain any "felonies involving violence," as were then enumerated under Ark. Code Ann. § 5-4-501(d)(2).  In or about April 2020, Plaintiff faced another charge of residential burglary.  Plaintiff's defense counsel was informed by Defendants' agent(s), at this

4

time, that this second residential burglary charge (now reclassified as a "felony involving violence" as explained, *infra*) would not render Plaintiff ineligible for parole. Therefore, upon the advice of counsel and based upon the representations made by Defendants, Plaintiff pleaded guilty to the second residential burglary charge, which carried a sentence of 240 months, and for which Plaintiff would be eligible for parole after 60 months, had the Defendants not altered their interpretation of applicable law. Since that time, at some point in or after May 2022, Plaintiff was informed that she would no longer be eligible for parole, because her residential burglary conviction for an offense occurring prior to April 1, 2015 was now classified as a "felony involving violence."

15.     Defendant Arkansas Department of Corrections is the state agency that oversees inmates and operates state prisons within the State of Arkansas.

16.     Defendant Solomon Graves is the Secretary of the Arkansas Department of Corrections. He (or his successor in office) is sued in both his official capacity and his individual capacity.

<u>**COMMON FACTUAL ALLEGATIONS**</u>

I.      **Parole Eligibility in Arkansas, Generally.**

17.     Under Arkansas law, for all offenders sentenced on or after January 1, 1994, parole eligibility is determined by statute.

18.     Critically, "[a] person's parole eligibility shall be determined by the laws in effect at the time of the offense for which he or she is sentenced to the Division of Correction." Ark. Code Ann. § 16-93-612.

19.     Certain offenses—and categories of offenses—can render a person ineligible for parole. Pertinent to this action, subsequent to August 13, 2001, "[a]ny person who commits a

violent felony offense or any felony sex offense subsequent to August 13, 2001, and who has previously been found guilty of or pleaded guilty or nolo contendere to any violent felony offense or any felony sex offense shall not be eligible for release on parole by the board." Ark. Code Ann. § 16-93-609(b)(1).  In turn, "'a violent felony offense or any felony sex offense' means those offenses listed in Ark. Code Ann. § 5-4-501(d)(2)" *Id.* at § 609(b)(2).

20.    Thus, if a person has two violent felonies or felony sex offenses on his or her record, that person will be ineligible for parole.

## II.    Under the Rubric of Criminal Justice Reform, Act 895 of 2015 Reclassifies Residential Burglary as a Violent Felony.

21.    In April 2015, the Arkansas Legislature passed Act 895, otherwise known as the Criminal Justice Reform Act of 2015 ("Act 895").

22.    The stated purpose of Act 895 was "to address prison overcrowding, promote seamless reentry into society, reduce medical costs incurred by the state and local governments, aid law enforcement agencies in fighting crime and keeping the peace, and to enhance public safety."[1]

23.    Among other things, Act 895 included the crime of residential burglary—as set forth in Ark. Code Ann. § 5-39-201(a)—in the list of "felonies involving violence" set forth under Ark. Code Ann. § 5-4-501(d)(2).

24.    Thus, following the enactment of Act 895, if a person had a conviction for residential burglary, any additional conviction or plea involving any *subsequent* violent felony or felony sex offense (including a second residential burglary) would render that person ineligible for parole.

---

[1] https://www.arkleg.state.ar.us/Acts/Document?type=pdf&act=895&ddBienniumSession=2015%2F2015R

6

25.     Following the enactment of Act 895, the Arkansas Department of Corrections ("ADC" or "Department") consistently articulated its position that the reclassification of residential burglary as a violent felony listed under Ark. Code Ann. § 5-4-501(d)(2) would only apply prospectively.  Pursuant to that interpretation, a residential burglary conviction or plea *prior* to April 1, 2015 could not count as one of the "two strikes" that would render a person ineligible for parole under Ark. Code Ann. § 16-93-609.  Conversely, any residential burglary conviction or plea after April 1, 2015 could count as one of the two strikes.

26.     For years, the ADC informed both prosecutors and defense attorneys of its position consistently and uniformly when asked.  In turn, prosecutors and defense attorneys operated with this understanding as they litigated criminal cases involving residential burglary charges or cases in which the defendant had an existing residential burglary conviction or plea.

27.     In particular, defense attorneys relied on this articulation of ADC policy when providing legal counsel to their clients.  In multiple instances, these attorneys specifically informed their clients that residential burglary convictions occurring prior to April 1, 2015 would not count as a violent felony offense triggering application of Ark. Code Ann. § 16-93-609.  This advice in turn influenced their client's calculus regarding whether to accept plea deals involving crimes that would otherwise render the defendant ineligible for parole under § 16-93-609.  This was also reflected on inmates' "time cards" showing them their parole eligibility dates.

28.     As one example, an attorney emailed the ADC in 2021 (Exhibit A), seeking to confirm this policy and presenting the Department with the following fact pattern:

> I have a client in Arkansas state court with a prior Arkansas
> residential burglary conviction from 2012. Client is now facing a
> new Arkansas residential burglary charge. If convicted a second
> time of residential burglary, I understood the statute requires them
> to serve 100% (no parole) of any sentence for residential burglary,
> BUT I recall from past cases that ADC may not be counting prior

7

> residential burglary convictions before the 2015 enactment of the
> statute as predicates for serving 100%. I'm trying to properly
> advise my client (and the prosecuting attorney). If you can help,
> I'd appreciate it.

The Department responded as follows:

> ADC is not counting prior residential burglaries if they occurred
> before residential burglary was added to the list (4/1/2015) for
> serving 100%. If your clients [*sic*] prior residential burglary
> conviction was in 2012, he/she will not be required to serve 100%
> of the sentence.

29.     This policy—that "ADC is not counting prior residential burglaries if they

occurred before residential burglary was added to the list (4/1/2015) for serving 100%"—was the

consistent position articulated by the ADC to any inquiring attorney, and the common

understanding of the criminal defense bar in Arkansas, from the date of passage of Act 895 until

May 2022.

30.     Notably, this policy was not formulated by Defendant Graves—he did not become

Secretary of the ADC until 2020.  Rather, this policy was implemented under his predecessor,

Wendy Kelley.  However, upon assuming his position, Defendant Graves ratified the policy, and

the ADC continued to state that it would not count pre-April-2015 residential burglaries "for

serving 100%" until May 2022.

**III.     In May of 2022, the State Reverses Its Position on Residential Burglaries
         Committed Prior to April 1, 2015.**

31.     On May 24, 2022, the Arkansas Attorney General issued Opinion No. 2022-010

("Opinion" or "AG Opinion 2022-10") (Exhibit B), which upended the existing interpretation of

Act 895 regarding residential burglaries of which the citizen was convicted prior to April 1,

2015.

32.     The Opinion addressed the following question posed by Defendant Graves:

8

> For purposes of parole eligibility under Ark. Code Ann. § 16-93-609, is a residential burglary committed before the effective date of Act [895] of 2015 (April [l], 2015) a prior 'violent felony offense' [so that] an offender with a current conviction for a violent felony offense [would be required] to serve 100% of his or her sentence?

33.    In response, the Opinion stated:

> Yes, an offender previously convicted of residential burglary who committed an additional offense on or after April 1, 2015 is not eligible for parole.

34.    The Opinion acknowledged that "[g]ranted, residential burglary was not designated as a 'felony involving violence' until 2015," but went on to say

> nothing in subsection 16-93-609(b) suggests that to render an offender ineligible for parole after the commission of another violent felony offense, the prior residential burglary must have occurred after 2015. Instead, to be ineligible for parole, an offender must only have committed his or her subsequent offense after the 2015 amendment's effective date. Thus, as relevant here. if the offender in question committed the crime for which he or she is currently serving a sentence after April 1, 2015, a prior conviction for residential burglary would render the offender ineligible for parole.

35.    However, the substance of § 16-93-609 does not end the legal inquiry. The Opinion failed to account for the Ex Post Facto Clause of the United States Constitution, which provides that "[n]o State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10.

36.    Ex post facto laws are laws which are retrospective and/or retroactive and which disadvantage the affected offender by altering the definition of criminal conduct or increasing the punishment for the crime. *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S. Ct. 891, 137 L. Ed. 2d 63 (1997). The Ex Post Facto Clause "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Weaver v. Graham*, 450 U.S. 24, 30, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981).

9

37.     Similarly, the Opinion failed to take into account the Due Process Clause of the

Fourteenth Amendment, and Supreme Court precedent holding that "an unforeseeable judicial

enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post*

*facto* law, such as Art. I, § 10, of the Constitution forbids." *Bouie v. Columbia*, 378 U.S. 347,

353, 84 S. Ct. 1697, 1702 (1964).  Thus, when an "unforeseeable state-court construction of a

criminal statute is applied retroactively to subject a person to criminal liability for past conduct,

the effect is to deprive him of due process of law in the sense of fair warning that his

contemplated conduct constitutes a crime." *Id.* at 354-55.

38.     By (1) reclassifying residential burglary as a violent felony through the enactment

of Act 895; yet (2) applying the reclassification to residential burglary convictions or pleas that

occurred *prior* to Act 895's effective date, ADC has turned Act 895 into an unconstitutional ex

post facto law and violated the Due Process Clause of the Fourteenth Amendment.

39.     The consequences of this about-face are devastating.  To date, at public hearings

involving this issue, Defendant Graves acknowledged that 393 inmates were affected, with 101

inmates having been released, and 292 inmates remaining in custody.[2]

### A. Even Under Its New Policy, Defendants Still Apply Their Parole Eligibility Procedures Capriciously and Unevenly.

40.     Of the 101 inmates that had been released, Defendant Graves stated that it would

be unlawful to return them to custody due to "inherit [*sic*] liberty," but that for the inmates who

remain in prison, their sentences and parole eligibility have been recalculated pursuant to AG

---

[2] Stephen Simpson, *Department of Corrections admits misinterpretation of Arkansas law, leading to re-incarceration, serving entire sentence without parole*, Arkansas Democrat Gazette (October 25, 2022) (available at https://www.arkansasonline.com/news/2022/oct/25/department-of-corrections-admits/)

Opinion 2022-10.[3] Despite this supposed recognition of a liberty interest held by released inmates, the Department did in fact re-incarcerate some inmates who had been released.

41.     Thus, the ADC *continues* to capriciously apply its policies, stating on the one hand that some inmates who already have been paroled under the old policy may not be required to serve out 100% of their sentences in prison (although some inmates were returned to prison), but any identically-situated prisoners who have not yet been paroled must serve out 100% of their sentence behind bars.  In some instances, inmates who have been anticipating parole within a matter of months or even weeks are now facing a decade or more of additional prison time.

42.     Yet the Fourteenth Amendment provides, in pertinent part, that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  When a state actor intentionally treats a member of an identifiable class differently from other similarly-situated individuals without a rational basis, or a rational relationship to a legitimate state purpose, for the difference in treatment, this violates the Equal Protection Clause of the Fourteenth Amendment.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000); *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008).

43.     This is a perverse and untenable result for a law aimed at "address[ing] prison overcrowding" and "promot[ing] seamless reentry into society."  Instead, the unconstitutional revision of ADC policy, facilitated by AG Opinion 2022-10, has wreaked havoc on inmates, their families, and their communities across Arkansas, and resulted in the needless extension of prison time (and even re-incarceration) for people who detrimentally relied on the previous,

---

[3] *Id.*

lawful policy set forth by the ADC and communicated to prosecutors and defense attorneys, alike.

44.     It is not just the inmates and their families who bear the burden of the ADC's policy reversal. The Arkansas Department of Corrections spends $24,000 per inmate per year.[4] Assuming that the ADC's estimate of 292 incarcerated inmates is correct, this means that its unlawful change in policy saddles Arkansas with an additional $7,008,000 in costs per year for the foreseeable future.

45.     Further, this unconstitutional shift in policy comes at a time when Arkansas prisons face drastic problems (and attendant costs) caused by overcrowding. In 2022, the Arkansas Legislature approved $75 million to create a new prison facility to address this issue, yet the 498-bed facility to be built with those funds will not ameliorate the problem—at present, observers estimate that the state prisons and county jails are over capacity by approximately 1,900 inmates.[5]

## PLAINTIFF'S EXPERIENCE

46.     Plaintiff Kristina Davis (a/k/a Kristina Cates) is currently incarcerated with the Arkansas Department of Corrections, inmate number ADC712198.

47.     Prior to April 1, 2015, Plaintiff's criminal record contained a count of residential burglary, but did not contain any "felonies involving violence," as then enumerated under Ark. Code Ann. § 5-39-201(a).

---

[4] Arkansas Advisory Committee to the U.S. Commission on Civil Rights, *Mass Incarceration & Civil Rights in Arkansas* (April 2020), at 6 (available at https://www.usccr.gov/files/pubs/2020/04-14-AR-Mass-Incarceration-Report.pdf)
[5] Neal Earley, *Arkansas needs more prisons to ease overcrowding, county officials tell legislators*, Arkansas Democrat-Gazette (September 1, 2022) (available at https://www.arkansasonline.com/news/2022/sep/01/arkansas-needs-more-prisons-to-ease-overcrowding/)

48.     In or about April 2020, Plaintiff faced another charge of residential burglary.

49.     Plaintiff's defense counsel wrote an email to Defendant ADC's Records Coordinator, seeking information as to Plaintiff's existing criminal record, in order to gauge whether her pending residential burglary charge would render her ineligible for parole.  Exhibit C. Plaintiff's defense counsel wrote, in pertinent part:

> Is there any way you can tell me if she has been in the ADC in the past?...[S]he is now facing a res. Burg [*sic*] charge, and according to the prosecutor, she has 4 prior for res burg.  Would a conviction for another res. Burg [*sic*] now be 100%?  I hate they made this a violent crime because it really messes up what we have to tell our clients.

50.     In response, DOC's Records Coordinator replied, in pertinent part:

> If she gets convicted of a residential burglary now, she would not have to serve 100%, at least looking at her Arkansas information. Remind them, that for the charge of residential burglary, to be considered for 100% it has to be committed after 04/01/2015.

51.     Therefore, upon the advice of counsel and based upon the representations made by Defendants, Plaintiff pleaded guilty to the second residential burglary charge, which carried a sentence of 240 months, and for which Plaintiff would be eligible for parole after 60 months, had the ADC not changed its policy.

52.     Since that time, at some point on or after May 2022, Plaintiff was informed that she would no longer be eligible for parole, because her residential burglary charge prior to April 1, 2015 was now classified as a "felony involving violence."

53.     Plaintiff must now serve 100% of her sentence—240 months—due to Defendants' unlawful ex post facto application of Act 895 and violations of the Due Process Clause of the Fourteenth Amendment.  Absent Defendants' unconstitutional policy, Plaintiff would be eligible for parole in 60 months.

13

## CLASS ALLEGATIONS

54.     Plaintiff brings this action, individually and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23.  Plaintiff seeks certification of the following Class (the "Class"):

> All inmates incarcerated by the Arkansas Department of Corrections who (1) were found guilty of, or pleading guilty or nolo contendere to, a count of residential burglary prior to April 1, 2015; and who (2) are currently ineligible for parole because of the reclassification of that offense following the issuing of the issuance of AG Opinion 2022-10.

55.     Excluded from the Class are the following individuals: Defendants and their parents, subsidiaries, affiliates, and any entity in which Defendants have a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

56.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

57.     **Numerosity (Rule 23(a)(1)).**  The members of the Class are so numerous that joinder is impractical.  As detailed above, there are at least 292 members of the Class.

58.     **Commonality (Rule 23(a)(2)).**  There are questions of law or fact common to the Class.  These questions include, but are not limited to, the following:

> i.   Whether Defendants' conduct, complained of herein, violates the Ex Post Facto Clause of the United States Constitution;
>
> ii.  Whether Defendants' conduct, complained of herein, violates the Due Process Clause of the Fourteenth Amendment;
>
> iii. Whether Defendants' conduct, complained of herein, violates the Equal Protection Clause of the Fourteenth Amendment;

14

        iv.  Whether an injunction should issue; and

        v.  Whether declaratory relief should be granted

59.    **Typicality (Rule 23(a)(3)).**  Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all members of the Class, was convicted or pleaded to a charge of residential burglary prior to April 1, 2015 and, following the issuance of AG Opinion 2022-10, Plaintiff's parole eligibility was eliminated due to the reclassification of that pre-2015 charge as a violent felony.

60.    **Adequacy (Rule 23(a)(4)).**  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff's interests do not conflict with the interests of the members of the Class.  Furthermore, Plaintiff has retained competent counsel experienced in class action litigation, and Plaintiff's counsel will fairly and adequately protect and represent the interests of the Class.

61.    **Final Declaratory or Injunctive Relief (Rule 23(b)(2)).**  A class action is maintainable under Rule 23(b)(2). The policies and practices of Defendants complained of herein are systemic. Thus, the representative Plaintiff, like all other members of the Class, has been injured and faces substantial risk of the same injury in the future. The factual basis of Defendants' misconduct is common to all members of the Class and represents a common thread of conduct resulting in injury to all members of the Class. Therefore, injunctive and declaratory relief is appropriate respecting the Class as a whole.

62.    **Predominance & Superiority (Rule 23(b)(3)).** In addition to satisfying the prerequisites of Rule 23(a), Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual Class members, and a class action is superior to individual litigation

and all other available methods for the fair and efficient adjudication of this controversy. The amount of damages available to individual Plaintiff is insufficient to make litigation addressing Defendants' conduct economically feasible in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

63. **Particular Issues (Rule 23(c)(4)).** Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(c)(4). Their claims consist of particular issues that are common to all Class and Subclass Members and are capable of class-wide resolution that will significantly advance the litigation.

## CAUSES OF ACTION

### COUNT ONE
**Violation of the Ex Post Facto Clause of Article 1, Section 10 of the U.S. Constitution
(As to all Defendants)**

64. Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

65. Following the issuance of AG Opinion 2022-10, Defendants' policy reversal on the effect of residential burglary convictions or pleas prior to April 1, 2015 on parole eligibility "creates a significant risk of prolonging [the] incarceration" of Plaintiff and members of the Class, in violation of the Ex Post Facto Clause. *Garner v. Jones*, 529 U.S. 244, 251, 120 S. Ct. 1362, 1368 (2000). Indeed, Plaintiff and members of the Class already have experienced drastically lengthened periods of incarceration.

16

66.     Alternatively, "evidence drawn from the rule's practical implementation by the agency charged with exercising discretion" demonstrates that the retroactive application of reclassifying residential burglary convictions and pleas prior to April 1, 2015 "will result in a longer period of incarceration than under the earlier rule." *Id.* at 255.

67.     Under either scenario, Defendants' conduct complained of herein subjects Plaintiff and members of the Class to longer periods of incarceration for acts that, when committed, did not render a person ineligible for parole.

68.     Defendants' retroactive application of Act 895 to residential burglary convictions or pleas occurring prior to 2015—and commensurate revocation of parole eligibility of Plaintiff and members of the Class based on said retroactive application—violates the Ex Post Facto Clause of Article 1, Section 10 of the United States Constitution.

69.     As a result of said violations, Plaintiff and Class members are entitled to prospective injunctive relief.

## COUNT TWO
### Violation of the Due Process Clause of the Fourteenth Amendment
### (As to all Defendants)

70.     Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

71.     Following the issuing of AG Opinion 2022-10, Defendants' policy reversal on the effect of residential burglary convictions or pleas prior to April 1, 2015 on parole eligibility amounts to "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, [which] operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids." *Bouie v. Columbia*, 378 U.S. 347, 353, 84 S. Ct. 1697, 1702 (1964).

72.     Because Defendants' "unforeseeable...construction" of Act 895 was "applied retroactively to subject a person to criminal liability for past conduct, the effect is to deprive him

17

of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime." *Id.* at 354-55.

73.     Defendants' conduct complained of herein was unforeseeable because, *inter alia*, it was the exact opposite of the repeatedly and consistently stated ADC policy since the passage of Act 895, which was relied upon and acted upon by Plaintiff and the Class.

74.     Further, Defendants continue to violate Plaintiff's and Class members' Due Process through the uneven application of the policy reversal.  Roughly 1/3 of affected inmates already have been released on parole and are (correctly) allowed to remain on parole given their "[inherent] liberty" in Defendants' view (although some were returned to prison) yet the incarcerated members of the Class, who are identically situated in the eyes of the law, must remain behind bars for decades more than they were initially told by their lawyers and by Defendants.

75.     As a result of said violations, Plaintiff and Class members are entitled to prospective injunctive relief.

**COUNT THREE**
**Violation of the Equal Protection Clause of the Fourteenth Amendment**
**(As to all Defendants)**

76.     Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

77.     The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

78.     When a state actor intentionally treats a member of an identifiable class differently from other similarly situated individuals without a rational basis, or a rational relationship to a legitimate state purpose, for the difference in treatment, this violates the Equal Protection Clause of the Fourteenth Amendment. *Village of Willowbrook v. Olech*, 528 U.S.

18

562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000); *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008).

79.    Defendants violated and continue to violate the Equal Protection Clause of the Fourteenth Amendment, as to Plaintiff and Class members, through the uneven application of their policy reversal.  Roughly 1/3 of affected inmates already have been released on parole and are (correctly) allowed to remain on parole given their "[inherent] liberty" in Defendants' view (although some were returned to prison), yet the incarcerated members of the Class, who are identically situated in the eyes of the law, must remain behind bars for decades more than they were initially told by their lawyers and by Defendants.

80.    Defendants' uneven and capricious application of their policy reversal has no rational basis, nor does it have a rational relationship to a legitimate state purpose, for the difference in treatment.

81.    As a result of said violations, Plaintiff and Class members are entitled to prospective injunctive relief.

### COUNT FOUR
### Pendent State Law Claim – Promissory Estoppel
### (As to Defendant Graves in his individual capacity)

82.    Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

83.    Through consistent representations regarding the application of the ADC's pre-May-2022 policy of "not counting prior residential burglaries if they occurred before residential burglary was added to the list (4/1/2015) for serving 100%" (*see* Paragraph 28, *supra*) Defendant Graves made a promise to Plaintiff and Class members.

19

84.     Specifically, Defendant Graves was aware that this was the existing policy of the Department of Corrections, and allowed that policy to be conveyed to inquiring defendants, their lawyers, and to prosecutors.

85.     Defendant reasonably should have expected—and indeed, did expect—Plaintiff and Class members, and their lawyers, to rely on this promise and to act (and/or refrain from acting) in reliance on this promise.

86.     Plaintiff and Class members, and their lawyers, did act and/or refrain from acting in reliance on this promise, and did so to their detriment.

87.     Injustice can only be avoided by enforcement of the promise made by Defendant to Plaintiff and Class members.

88.     Plaintiff and Class members seek injunctive relief, as well as damages in an amount to be proven at trial.

**COUNT FIVE**
**Pendent State Law Claim – Breach of Contract**
**(As to Defendant Graves in his individual capacity)**

89.     Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

90.     Through consistent representations regarding the application of the ADC's pre-May-2022 policy of "not counting prior residential burglaries if they occurred before residential burglary was added to the list (4/1/2015) for serving 100%" (*see* Paragraph 28, *supra*), Defendant Graves entered into a contract with Plaintiff and Class members.

91.     Specifically, Defendant Graves was aware that this was the existing policy of the Department of Corrections and allowed that policy to be conveyed to inquiring defendants, their lawyers, and to prosecutors.  This policy formed a key term of an enforceable contract between

20

Defendants, on the one hand, and Plaintiff and Class members, on the other. This contract was supported by consideration.

92.     Plaintiff and Class members performed under the terms of this agreement.

93.     Defendant Graves was similarly obligated to perform under terms of the agreement yet failed to do so when he directed the Department of Corrections to reverse its policy governing parole eligibility for offenders with residential burglaries prior to April 1, 2015. This action was a breach of a material term of the contract between Defendant Graves, on the one hand, and Plaintiff and Class members, on the other.

94.     Plaintiff and Class members have suffered damages as a result of Defendant Graves' breach.

95.     Plaintiff and Class members seek injunctive relief, as well as damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and members of the Class respectfully ask this Court for the following:

    a.  That judgment be entered against Defendants and in favor of Plaintiff and Class members on the causes of action set forth in this Complaint;

    b.  That judgment be entered against Defendants for all injunctive, declaratory, and other equitable relief sought, including but not limited to an order permanently enjoining Defendants from retroactively applying Act 895's reclassification of residential burglaries for conduct occurring prior to April 1, 2015;

    c.  Damages in an amount to be proven at trial;

    d.  Reasonable attorney's fees and litigation costs, pursuant to 42 U.S.C. § 1988; and

    e.  All other such other relief as the Court deems just and equitable.

21

Dated: November 22, 2022

Respectfully Submitted,

David Slade (ABN 2013143)
slade@wh.law
Brandon Haubert (ABN 2013137)
brandon@wh.law
Stewart Whaley (ABN 2009084)
stewart@wh.law
wh LAW
1 Riverfront Place, Suite 745
North Little Rock, AR 72114
Tel: (501) 891-6000
Fax: (501) 222-3027

JEFF ROSENZWEIG
Arkansas Bar No. 77115
300 Spring St., Suite 310
Little Rock, AR 72201
(501) 372-5247
jrosenzweig@att.net

Michael Kiel Kaiser (ABN 2015001)
LASSITER & CASSINELLI
300 S. Spring St., Suite 800
Little Rock, AR 72201
501-370-9300 (office)
501-370-9306 (fax)
michael@LCArkLaw.com

Jordan Tinsley (ABN 2008270)
TINSLEY & YOUNGDAHL, PLLC
1218 West Sixth Street
Little Rock, AR 72201
Office: (501) 374-2099
Fax: (501) 374-2098
Jordan@TYattorney.com

Lauren M. Elenbaas, (ABN 2014130)
SHAW & ELENBAAS
1315 Main Street
Conway, Arkansas 72034
Phone: 501-329-5803
Fax: 501-327-2961
laurenshawlaw@gmail.com

*Attorneys for Plaintiff and the proposed Class*

# EXHIBIT A

**From:** Shelli Maroney <**Shelli.Maroney@arkansas.gov**>
**Sent:** Wednesday, August 4, 2021 3:15 PM
**To:** **jeff@harrelsonfirm.com**
**Subject:** FW: Parole question re: second residential burglary conviction

Good afternoon Mr. Harrelson,

I have been aske d to respond to your email below. ADC is not counting prior residential burglaries if they occurred before residential burglary was added to the list (4/1/2015) for serving 100%.  If your clients prior residential burglary conviction was in 2012, he/she will not be required to serve 100% of the sentence.

Thank you.



*Shelli Maroney*

**ADC Records Administrator**
**Arkansas Division of Corrections**
**2403 E. Harding Ave**
**Pine Bluff, Ar 71601**
**Shelli.Maroney@Arkansas.gov**
Office: 870-267-6679
Cell: 870-550-8547

Confidentiality Notice: This e-mail message and any attachments is the property of the State of Arkansas and may be protected by state and federal laws governing disclosure of private information. It is for the intended recipient only. If an addressing or transmission error has misdirected this e-mail, please notify the author by replying to it. If you are not the intended recipient you may not use, disclose, distribute, copy, print or rely on this e-mail.

**From:** Christine Cryer <**Christine.Cryer@arkansas.gov**>
**Sent:** Wednesday, August 4, 2021 3:00 PM
**To:** Shelli Maroney <**Shelli.Maroney@arkansas.gov**>
**Subject:** FW: Parole question re: second residential burglary conviction

Would you mind responding to him please?

**From:** Jeff Harrelson <**jeff@harrelsonfirm.com**>
**Sent:** Wednesday, August 4, 2021 1:17 PM
**To:** Christine Cryer <**Christine.cryer@arkansas.gov**>
**Subject:** Parole question re: second residential burglary conviction

Ms. Cryer: In the past, I had contacted Mr. DePriest regarding ADC parole issues, but I understand he has retired and I was directed to your office. If someone else at ADC handles these issues, please notify me or just forward this message to them and copy me so I can try to get some direction with my issue.

I have a client in Arkansas state court with a prior Arkansas residential burglary conviction from 2012. Client is now facing a new Arkansas residential burglary charge. If convicted a second time of residential burglary, I understood the statute requires them to serve 100% (no parole) of any sentence for residential burglary, BUT I recall from past cases that ADC may not be counting prior residential burglary convictions before the 2015 enactment of the statute as predicates for serving 100%. I'm trying to properly advise my client (and the prosecuting attorney). If you can help, I'd appreciate it. I'm working from home a lot, so if a call is better, my cell number is ███████. Thanks.

Jeff Harrelson
Attorney at Law
210 North State Line Avenue, Suite 503 (71854)
Post Office Box 40 (75504)
Texarkana, Ark.-Tex.
Telephone: (870)772-0300
Fax: (870)772-0302
Email: **jeff@harrelsonfirm.com**

# EXHIBIT B



STATE OF ARKANSAS
ATTORNEY GENERAL
LESLIE RUTLEDGE

<u>Opinion No. 2022-010</u>

May 24, 2022

Mr. Solomon Graves
Secretary, Ark. Dep't of Corrections
1302 Pike Ave, Suite C
North Little Rock, AR 72114

Dear Secretary Graves:

This is in response to your request for my opinion on the following question concerning Ark. Code Ann. § 16-93-609:

> For purposes of parole eligibility under Ark. Code Ann. § 16-93-609, is a residential burglary committed before the effective date of Act [895] of 2015 (April [1], 2015) a prior 'violent felony offense' [so that] an offender with a current conviction for a violent felony offense [would be required] to serve 100% of his or her sentence?

**RESPONSE**

Yes, an offender previously convicted of residential burglary who committed an additional offense on or after April 1, 2015 is not eligible for parole.

**DISCUSSION**

Section 16-93-609 states in relevant part that any person who commits a violent felony after August 13, 2001, and who has previously been found guilty of a violent felony shall not be eligible for parole:

> Any person who commits a violent felony offense ... subsequent to August 13, 2001, and who has previously been found guilty of or

Mr. Solomon Graves
Secretary, Dep't of Corrections
Opinion No. 2022-010
Page 2

pleaded guilty or nolo contendere to any violent felony offense ...
shall not be eligible for release on parole by the board.[1]

A "violent felony offense" means those offenses listed in Ark. Code Ann. § 5-4-501(d)(2),[2] and "[r]esidential burglary" is among those offenses.[3] Thus, subsection 16-93-609(b)'s parole ineligibility provision applies to a defendant "who has previously been found guilty of or pleaded guilty or nolo contendere to any violent felony offense," including residential burglary.

Granted, residential burglary was not designated as a "felony involving violence" until 2015.[4] But critically for your question, nothing in subsection 16-93-609(b) suggests that to render an offender ineligible for parole after the commission of another violent felony offense, the prior residential burglary must have occurred after 2015. Instead, to be ineligible for parole, an offender must only have committed his or her subsequent offense after the 2015 amendment's effective date.[5] Thus, as relevant here, if the offender in question committed the crime for which he or she is currently serving a sentence after April 1, 2015, a prior conviction for residential burglary would render the offender ineligible for parole.

Sincerely,

*[signature]*

LESLIE RUTLEDGE
Attorney General

---

[1] Ark. Code Ann. § 16-93-609(b)(1) (Supp. 2021).

[2] *Id.* at § 16-93-609(b)(2) ("As used in this subsection, 'a violent felony offense' ... means those offenses listed in § 5-4-501(d)(2).").

[3] Ark. Code Ann. § 5-4-501(d)(2)(A)(xi) (Supp. 2021).

[4] *See* Acts 2015, No. 895, § 3 (effective April 1, 2015, adding "residential burglary, § 5-39-201(a)" as a "felony involving violence" under Ark. Code Ann. § 5-4-501(d)(2)).

[5] Nor for that matter would the application of the statute to offenders who committed an additional offense after April 1, 2015, present any constitutional issues since an offender would be sentenced pursuant to the statute in effect at the time of his or her offense. *See Handy v. State*, 2017 Ark. App. 74, *7-8, 510 S.W.3d 292, 297 (2017) (rejecting the argument that none of the offender's pre-2015 felony residential burglaries should have counted toward his habitual-offender status under Ark. Code Ann. § 5-4-501(d)(1)).

# EXHIBIT C

## Gregg Parrish

**From:** Charonda Rushing
**Sent:** Friday, April 10, 2020 10:31 AM
**To:** Gregg Parrish
**Subject:** RE: Kristina Davis, dob ▮▮▮▮ W/F

Yes, she is listed under Kristina Cates, ADC712198. She had some probation sentences from Miller and Hempstead County.

Miller County, 2002-530, forgery, 36 month probation
Miller County, 2011-637, forgery, 10 year probation
Hempstead County, 2012-18, Poss., furnishing Proh. Articles, B &E, Poss., Obstruct Gov. Op., 6 years probation
Miller County, 2012-62, Res. Burg, 10 year probation

She came to ADC on the below cases from Hempstead and Miller County:
2013-63 from Hempstead County 72 month sentence
2012-52(revo) from Miller County 72 month sentence

If she gets convicted of a residential burglary now, she would not have to serve 100%, at least looking at her Arkansas information. Remind them, that for the charge of residential burglary, to considered for 100% it has be committed after 04/01/2015. I am not able to run a background to check for any out of state charges. But keep in mind, that residential burglary, committed after 01/01/2018 serves ½, not 1/3.

Hope this helps.


Charonda Rushing, Records Coordinator
Centralized Records
Administrative Annex East
2403 E. Harding
Pine Bluff, AR 71601
Phone: (870) 267-6679
Fax: (870) 267-6607
Email: charonda.rushing@arkansas.gov

**Confidentiality Notice: This e-mail message and any attachments is the property of the State of Arkansas and may be protected by state and federal laws governing disclosure of private information. It is for the intended recipient only. If an addressing or transmission error has misdirected this e-mail, please notify the author by replying to it. If you are not the intended recipient you may not use, disclose, distribute, copy, print or rely on this e-mail.**


**From:** Gregg Parrish <Gregg.Parrish@arkansas.gov>
**Sent:** Friday, April 10, 2020 9:20 AM
**To:** Charonda Rushing <Charonda.Rushing@arkansas.gov>
**Cc:** Gregg Parrish <Gregg.Parrish@arkansas.gov>
**Subject:** Kristina Davis, dob ▮▮▮▮ W/F

1

Is there any way you can tell me if she has been in the ADC in the past?  She has pending charges in Howard County, and the prosecutor tells me she has an extensive history, but I don't see anything online.

Also, she is now facing a res. Burg charge, and according to the prosecutor, she has 4 priors for res burg.  Would a conviction for another res. Burg now be 100%?  I hate they made this a violent crime because it really messes up what we have to tell our clients.

Hope you are staying safe as well as your loved ones.  Take care of yourself.

GREGG E. PARRISH
Executive Director
Arkansas Public Defender Commission
101 E. Capitol Ave.
Suite 201
Little Rock, AR  72201
(501) 682 9070